NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABEL LEONE, | Civil Action No. 11-3957 (ES) |
| Plaintiff, | **OPINION** |
| v. | |
| NORTH JERSEY ORTHOPAEDIC SPECIALISTS, P.A., *et al.*, | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Pending before this Court is North Jersey Orthopaedic Specialists, P.A.'s ("Defendant" or "NJOS") motion to dismiss Isabel Leone's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 7). The Court has jurisdiction under 28 U.S.C. § 1331. The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants Defendant's motion as to the First, Second, and Fourth Counts in Plaintiff's Complaint, but the Court denies Defendant's motion as to Plaintiff's Third Count and as to damages.

**I.    Background**

Plaintiff alleges that in October 2003, she began working as an employee at NJOS. (Compl. ¶¶ 2, 12). From that time until a few months before her April 4, 2009 termination, Plaintiff was afforded an accommodation—leaving early to see her doctor to undergo blood treatment—for her medical condition, Protein S. Deficiency, a genetic blood clotting disorder.

(*Id.* ¶¶ 9, 12-13). Despite her diagnosis, Plaintiff alleges that "at all times relevant Plaintiff was, and is, fully capable of performing all aspects of her job . . . . [and] throughout her employment, Plaintiff's performance consistently met Defendant's reasonable expectations." (*Id.* ¶¶ 9-11).

Plaintiff alleges that, despite being an excellent employee, certain members of NJOS treated her unfairly because she had to travel to her doctor's office often for treatment. (*Id.* ¶ 14). As an example, Plaintiff avers that in May 2008, she was not chosen to partake in MRI training. (*Id.* ¶ 15). When Plaintiff confronted Dr. Lee, an owner of NJOS and a member of its upper management, (*id.* ¶ 29), Dr. Lee stated, "[b]ecause you have to go to the doctor every Thursday, we don't need a disruption in the MRI scheduled [sic]," and "[y]ou're too old for this . . . . We don't know if you'll be around long enough to live out the $3000 it costs to train you." (*Id.* ¶¶ 16-17).

Plaintiff then requested a transfer. Initially, an agreement was made that Plaintiff would be transferred to the Closter office to work three half days—one being Thursday—so that she could see her oncologist/hematologist. (*Id.* ¶ 18). However, about three months before her termination, Plaintiff was told that she would have to work in the Englewood office on Thursdays, preventing her from attending her appointments. (*See id.* ¶ 19). When Plaintiff reminded Dr. Lee that she had to see her doctor on Thursday, Plaintiff alleges that Dr. Lee stated, "'that's your problem' and that [Plaintiff] had to 'figure it out.'" (*Id.* ¶ 20). Plaintiff also alleges that Dr. Lee said, "[g]o to Englewood on Thursdays or quit, I don't care." (*Id.* ¶ 21).

Subsequently, Plaintiff complained to Dr. Brief,[1] who "initially stated that if NJOS was given advance notice, it wouldn't be a problem for Ms. Leone to leave for her scheduled medical appointments." (*Id.* ¶ 22). Then, Plaintiff was advised by Dr. Archer that Dr. Lee said, "[i]f she

---

[1] Drs. Brief and Archer are not mentioned elsewhere in the Complaint; therefore, the Court is unable to determine how Drs. Brief and Archer relate to Dr. Lee or Plaintiff.

2

can't comply with our requirement that she work at Englewood, fire her, I don't care about any agreement made a year ago." (*Id.* ¶ 23). Three days later, on April 4, 2009, Plaintiff was told by Jennifer Holowach, Director of Human Resources for NJOS, that she was being let go because the company "can no longer accommodate your needs, and we suggest you find another job that could offer more flexibility because of your condition." (*Id.* ¶ 24). Plaintiff alleges that she was replaced in her position by another individual, (*id.* ¶ 25), who was "significantly younger than she." (*Id.* ¶ 45).

On October 30, 2009, Plaintiff filed a written charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 7). The EEOC found reasonable cause to believe that Defendant violated the ADA. (*Id.* ¶ 8). However, because the EEOC was unable to effectuate a settlement, it issued a Notice of Right to Sue on April 27, 2011. (*Id.*). On July 11, 2011, Plaintiff filed the instant Complaint, including a First Count under the Americans with Disabilities Act of 1990 ("ADA") for disability discrimination and/or record of disability discrimination, (*id.* ¶¶ 27-31); a Second Count under the ADA for retaliation/termination (*id.* ¶¶ 32-39); a Third Count under the Age Discrimination in Employment Act of 1967 ("ADEA") because Plaintiff is over the age of 40 and because she alleges that, following her termination from NJOS, she was replaced by another employee significantly younger than she, (*id.* ¶¶ 40-45); and a Fourth Count under Title II of the Genetic Information Nondiscrimination Act of 2008 ("GINA") because Plaintiff alleges that "Defendants used Plaintiff's genetic information to make unfavorable, or discriminatory, decisions as part of Plaintiff's employment" based on Plaintiff's Protein S. Deficiency. (*Id.* ¶¶ 46-49). On September 6, 2011, Defendant moved to dismiss Plaintiff's Complaint on the grounds discussed below.

## II.     Legal Standard

### A.     Motion to Dismiss for Failure to State a Claim: Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. Dec. 6, 2010) (holding that contradictory factual assertions on the part of defendants must be ignored). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.    Discussion

### A.     Exhaustion

Defendant first argues that because Plaintiff failed to bring an EEOC charge within 180 days of the alleged discriminatory acts, Plaintiff failed to exhaust her administrative remedies and therefore Plaintiff's ADA, ADEA, and GINA claims should be dismissed. (Def. Moving Br. at 6 (citing 42 U.S.C. §§ 2000e, 2000e-5(e)(1), 12117(a) (180 days to file an EEOC charge in the ADA context); 29 U.S.C. § 626(d)(1)(A) (ADEA claims); 29 C.F.R. § 1635.10 (GINA claims))). In opposition, Plaintiff argues that the 180-day timeframe does not apply; instead, the charge was

subject to a 300-day window because Plaintiff submitted a "Dual Charge Filing Form," which extends the clock for charges filed with the concomitant state entity, here, the New Jersey Department of Civil Rights. (Pl. Opp. Br. at 5-7 (citing 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5)). In support of her position, Plaintiff attaches—to her opposition brief, not to the Complaint—a purported copy of the Dual Charge Filing Form. (Pl. Opp. Br. Ex. B, Charging Party Determination as to Charge Processing by NJDCR dated Dec. 16, 2009 and Addendum to Charge of Discrimination dated Dec. 16, 2009).

To decide a 12(b)(6) motion, a court considers the allegations in the complaint, documents attached to the complaint, documents "integral to and/or . . . explicitly relied upon by the . . . complaint," and matters of public record. *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007). If a court considers additional, extrinsic materials, the Court must convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

At this time, the Court will not convert Defendant's motion to one for summary judgment, because the parties have not briefed this motion with the benefit of complete discovery, and therefore the Court will not consider the Dual Charge Filing Form, which Plaintiff appends to her opposition brief, and thus falls outside of the pleadings. Additionally, this Opinion affords Plaintiff the opportunity to amend her Complaint. Therefore, the Court need not, at this time, reach the issue of which time-frame applies to Plaintiff's EEOC charge, because the Court does not yet know which Counts Plaintiff will choose to pursue following this Opinion, how Plaintiff will plead those Counts, and whether Plaintiff will determine that the Dual Charge Filing Form is, in fact, integral enough to attach to the Complaint.

### B.     Elemental Analysis

#### 1.     ADA: First and Second Counts

In her First and Second Counts, Plaintiff alleges that NJOS violated the ADA by discriminating against Plaintiff on the basis of her alleged disability and her record of an alleged disability. (Compl. ¶¶ 27-39). Defendant argues that Plaintiff has failed to plausibly plead facts establishing a "disability" or the requisite "record" to sustain ADA claims under Rule 12(b)(6). (Def. Moving Br. at 7-8). In opposition, Plaintiff argues that she has adequately pleaded the requisite elements by alleging that she suffered from Protein S. Deficiency, that her employer was aware of this disability and provided Plaintiff accommodation, but that Defendant later withdrew the accommodation and terminated her based on her disability. (Pl. Opp. Br. at 7-8).

To establish a claim under the ADA, Plaintiff, as a threshold matter, must plausibly plead that she has a "disability." *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 359 (3d Cir. 2000). Under 42 U.S.C. § 12102(1), a disability is: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Accordingly, for 12(b)(6) purposes, Plaintiff must plead the following three elements: (1) that Plaintiff suffers from a "physical or mental impairment"; (2) that the impairment limits an activity that constitutes a "major life activity" under the ADA; and (3) the limitation is "substantial." 42 U.S.C. § 12102(1)(A).

As to element (1), Plaintiff alleges that her "physical impairment" is Protein S. Deficiency, a genetic blood clotting disorder. (Compl. ¶¶ 9-10). A physical impairment is:

> [A]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs;

6

>    cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine . . . .

*Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) (quoting 45 C.F.R. § 84.3(j)(2)(i)).  In *Bragdon*, the Supreme Court also stated that in issuing the regulations, the Department of Health, Education, and Welfare "decided against including a list of disorders constituting physical or mental impairments, out of concern that any specific enumeration might not be comprehensive." *Id.* at 633 (quoting 42 Fed. Reg. 22685 (1977), *reprinted in* 45 C.F.R. pt. 84, App. A, p. 334 (1997)).  Based upon the reasoning in *Bragdon*, this Court concludes that Protein S. Deficiency qualifies under the broad definition of disability for purposes of 12(b)(6).  However, the more important question is whether Plaintiff sufficiently alleges that Protein S. Deficiency substantially limits a major life activity.  The Court finds that Plaintiff has failed in this respect.

As to elements (2) and (3), the Court is unable to determine, based on Plaintiff's allegations, what major life activity her Protein S. Deficiency substantially affects.  At first, Plaintiff appears to allege that working an uninterrupted work-week is the major life activity at issue.  (*See* Compl. ¶ 18 ("Starting in May 2009, an agreement was made that Ms. Leone would be transferred to the Closter office to work three half days, one being Thursday, so that she was able to see her oncologist/hematologist on Thursday."), ¶ 24 ("Three days later, on April 4, 2009 Ms. Leone was told . . . that [she] was being let go because the company 'can no longer accommodate your needs, and we suggest you find another job that could offer more flexibility because of your condition.'")).  In contradictory fashion, Plaintiff then alleges that "[d]espite her disability, at all times relevant Plaintiff was, and is, fully capable of performing all aspects of her job at [NJOS]."  (Compl. ¶ 10).  If Plaintiff's alleged "major life activity" is working, then her allegation—that she is and was "fully capable of performing all aspects of her job"—directly contradicts the theory that Plaintiff's Protein S. Deficiency "substantially affected" her ability to

7

engage in the major life activity at issue. Other than Plaintiff's allegations that she required accommodations to attend doctor's appointments—*i.e.*, that Plaintiff's Protein S. Deficiency affected her ability to work—the Court cannot find any allegations in the Complaint that could reasonably be viewed as supporting her physical impairment's effect on a major life activity. Accordingly, Plaintiff's First and Second Counts under the ADA fail under 12(b)(6) because she insufficiently alleges a "disability" under the statute.[2]

### 2. ADEA: Third Count

Other than Defendant's argument that Plaintiff's ADEA claim is barred for failure to exhaust administrative remedies within the allotted time (addressed above), and Defendant's arguments related to damages under the ADEA (discussed below), Defendant does not make arguments on the elements of Plaintiff's ADEA claim. (*See* Def. Moving Br. at 10). Accordingly, the Court will not address the elements of that claim, and the Third Count survives Defendant's motion to dismiss.

### 3. GINA: Fourth Count

In her Fourth Count, Plaintiff alleges that NJOS violated GINA by discriminating against her on the basis of her genetic blood disorder when NJOS denied Plaintiff time off and job assignments and then fired her. (Compl. ¶¶ 46-49). Defendant argues that Plaintiff's GINA claim fails because "[s]he has not alleged any facts showing that [NJOS] obtained any information about her 'genetic tests' and that [NJOS] somehow discriminated against her upon learning the results of any such tests." (Def. Moving Br. at 9). Additionally, Defendant argues, "she has not pleaded any facts that could plausibly show employment discrimination based on

---

[2] Plaintiff's "record discrimination" claims under the ADA fail for the same reason. A record claim requires Plaintiff to plausibly plead that Plaintiff "had a 'history of, or [had] been misclassified as having, an impairment that substantially limited a major life activity." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 437 (3d Cir. 2009) (quoting *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999) (citing 29 C.F.R. § 1630.2(k))). Because a record claim requires the same threshold showing of "disability," the Court also dismisses Plaintiff's record claims.

8

her 'genetic information.'" (Def. Reply Br. at 5 (quoting 42 U.S.C. § 2000ff-1(a)(1)). Conversely, Plaintiff argues that she has "alleged harassment because of genetic information relating to her Protein S. Deficiency." (Pl. Opp. Br. at 16). Moreover, "Defendant's refusal to continue with an accommodated work schedule constitutes a hostile or offensive work environment, [and] the demeaning comments by her employers . . . as well as the failure to provide training and her termination, clearly are violations of GINA." (*Id.* at 17 (citing Compl. ¶¶ 16, 20, 21, 23, 24)).

Under GINA's provision against "[d]iscrimination based on genetic information," 42 U.S.C. § 2000ff-1(a), "[i]t shall be an unlawful employment practice for an employer—"

> (1) to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee; or
>
> (2) to limit, segregate, or classify the employees of the employer in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee, because of genetic information with respect to the employee.

Section 2000ff(4)(A) defines "genetic information" as "information about—(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." The Court therefore reviews the Complaint to determine whether Plaintiff has pleaded and plausibly supported, at least, (1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests.

Although Plaintiff has pleaded the requisite legal conclusions supporting the statutory requirements above, the Court finds that Plaintiff has failed to plausibly support these legal conclusions. Plaintiff alleges that she was "[d]iscriminated against by Defendants, *i.e.*, denied time off, lost job assignments, and terminated because of her genetic blood disorder,"

9

(Compl. ¶ 47); that "Defendants used Plaintiff's genetic information to make unfavorable, or discriminatory, decisions as part of Plaintiff's employment," (*id.* ¶ 48); and "Defendants' [sic] violated GINA which prohibits workplace discrimination, when Defendants terminated Plaintiff due to her genetic blood clotting disorder; Protein S. Deficiency." (*Id.* ¶ 49).

Plaintiff provides plausible support for elements (1) and (2), but fails to plausibly support element (3), that she was discriminated against "because of" information from Plaintiff's genetic tests. Plaintiff provides plausible support for element (1)—that she was an employee—throughout her Complaint. (*See*, *e.g.*, Compl. ¶ 1). She also provides plausible support for element (2)—that she was discharged or deprived of employment opportunities. (*See id.* ¶ 15 ("[I]n May 2008, when the company chose employees to partake in MRI training, Ms. Leone was not chosen."), ¶ 24 (stating that Ms. Leone was terminated on April 4, 2009)).

Plaintiff's support for element (3) is insufficient. Plaintiff alleges that Dr. Lee told her that the reason she was passed over for MRI training was that "you have to go to the doctor every Thursday, [and] we don't need a disruption in the MRI scheduled [sic]." (*Id.* ¶ 16). Although this allegation demonstrates that Plaintiff was passed over because she needed to attend doctor's appointments, the allegation fails to plausibly support the theory that Dr. Lee based his decision on the results of genetic tests. The link between Dr. Lee's decision and Plaintiff's Protein S. Deficiency is even less clear in light of Plaintiff's allegation that she was "[s]urprised by this statement [by Dr. Lee in Paragraph 16 of the Complaint], and when Ms. Leone followed up on Dr. Lee's statement, his response became even more damaging: '*You're too old for this*' and 'We don't know if you'll be around long enough to live out the $3000 it costs to train you.'" (*Id.* ¶ 17 (emphasis added)). As such, Dr. Lee's statement appears to

provide an age-based—as opposed to a genetic-based—rationale for the decision not to select Plaintiff for MRI training.

Similarly, Plaintiff alleges that Human Resources Director Jennifer Holowach provided Plaintiff with the following rationale for Plaintiff's termination: "[T]he company 'can no longer accommodate your needs, and we suggest you find another job that could offer more flexibility because of your condition.'" (*Id.* ¶ 24). In the next Paragraph, Plaintiff alleges that she "was replaced in her position by another individual." (*Id.* ¶ 25). Plaintiff later adds, "[a]fter her illegal termination, Plaintiff was replaced by another employee significantly younger than she." (*Id.* ¶ 45). Plaintiff again blurs the age-based and gene-based theories of liability. To be sure, it is possible to allege that one's termination was based on age *and* the results of genetic tests of which the employer was aware, but it is critical at the pleading stage for Plaintiff to provide plausible factual support for *each* alleged theory of liability. Here, Plaintiff's Complaint lacks clarity on which facts support which claims, and Plaintiff offers potentially conflicting rationales for being passed over for MRI training and for being terminated. *See Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010) ("In keeping with the Court's duty to assume the veracity the allegations contained in the Complaint when deciding the pending Motion to Dismiss, *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), any contradictory factual assertions on the part of Defendants have not been credited."). Accordingly, the Court seeks greater clarity from Plaintiff, and dismisses Plaintiff's GINA claim without prejudice, with leave to amend.

11

### C. Damages

#### 1. Second Count: ADA Retaliation

Defendant argues that even if Plaintiff adequately pleaded her ADA retaliation claim, Plaintiff still would not be entitled to compensatory or punitive damages, because a plaintiff suing for retaliation under 42 U.S.C. § 12203 can only obtain equitable relief and back pay. (Def. Moving Br. at 9-10 (citing *Kramer v. Banc of Am. Sec.*, LLC, 355 F.3d 961, 965 (7th Cir. 2004) ("[T]he 1991 Civil Rights Act does not expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive damages are not available."))). In opposition, Plaintiff argues that the Third Circuit is silent on the issue of whether compensatory and punitive damages are available for ADA retaliation claims, and therefore the Court should apply the standard used in the ADA discrimination context generally: that compensatory and punitive damages are appropriate where the employer has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of the plaintiff. (Pl. Opp. Br. at 19-20 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534-35 (1999))).

Because it is unclear at this point in the litigation whether Plaintiff can adequately plead a "disability" under the ADA, or whether Plaintiff can adequately plead that the related discrimination rose to the level of malice or recklessness, the Court need not, nor will it, decide whether particular damages attach to a plausibly pleaded claim under the ADA. Therefore, the Court denies Defendant's request, at this stage, to dismiss Plaintiff's claims for compensatory and punitive damages for retaliation under the ADA.[3]

---

[3] The Court does note, however, that the weight of authority from district courts within the Third Circuit have followed the Seventh Circuit's holding in *Kramer* that compensatory and punitive damages are not available for ADA retaliation claims. *See*, *e.g.*, *Kozempel v. Grand View Hosp.*, No. 10-6839, 2011 WL 1196851, at *3 (E.D. Pa. Mar. 30, 2011) ("While federal courts are divided on the question, a significant number of cases at both the appellate

        **2.     Third Count: ADEA**

In her Complaint, Plaintiff requests damages for pain and suffering as well as punitive damages under the ADEA. In her opposition brief, Plaintiff concedes that these damages are unavailable, and instead asks to amend to add a claim for "liquidated damages" under 29 U.S.C. § 262(b). (Pl. Opp. Br. at 21). Liquidated damages are available where Plaintiff adequately alleges that violation of the ADEA was "willful." 29 U.S.C. 626(b) ("[L]iquidated damages shall be payable only in cases of willful violations of this chapter."). Because the Court grants Plaintiff leave to amend the claims dismissed in this Opinion, the Court will also grant Plaintiff leave to amend her claims for damages in conformance with the relevant statutes and case law. *See Phillips*, 515 F.3d at 228 ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint."). The Court therefore denies this portion of Defendant's motion as moot.

**V.    Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion. The Court grants Defendant's motion as to the First, Second, and Fourth Counts in Plaintiff's Complaint, but the Court denies Defendant's motion as to Plaintiff's Third Count and as to Plaintiff's claims for damages. The Court dismisses the First, Second, and Fourth Counts without prejudice and grants Plaintiff leave to amend the Complaint—consistent with this Opinion—within thirty days.

                                                                                  s/*Esther Salas*
                                                                                  **Esther Salas, U.S.D.J.**

---

and trial court level have held that the anti-retaliation provisions of the ADA do not authorize the award of compensatory and punitive damages, including the cases in the Eastern and Western District of Pennsylvania."); *Baker v. PPL Corp.*, No. 09-0428, 2010 WL 419417, at *6-7 (M.D. Pa. Jan. 29, 2010); *Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 331-32 (W.D. Pa. 2004).